1   DANIEL V. NIXON (CA SB #132392)
    *danielnixon@byrnenixon.com*
2   CATHRYNNE D. DALE (CA SB #206513)
    *catdale@byrnenixon.com*
3   BYRNE & NIXON, LLP
    800 West Sixth Street, Suite 430
4   Los Angeles, California 90017
    Tel: (213) 620-8003
5   Fax: (213) 620-8012

6

7   Attorneys for Defendants
    CALIFORNIA PRODUCTS INTERNATIONAL, INC.
    & MOHAMAD ALI KHALIL
8

9               UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12  TRACFONE WIRELESS, INC., a          )   CASE NO. CV 08-1877 SGL (JCRx)
    Delaware Corporation,               )
13                                      )   **SUPPLEMENTAL FILING IN**
                Plaintiffs,             )   **SUPPORT OF DEFENDANTS'**
14                                      )   **OPPOSITION TO PLAINTIFF'S EX**
           vs.                          )   **PARTE APPLICATION FOR**
15                                      )   **EXPEDITED DISCOVERY AND FOR**
    CALIFORNIA PRODUCTS                 )   **ORDER TO PRESERVE EVIDENCE**
16  INTERNATIONAL, INC., a California   )   **& REQUEST FOR FURTHER**
    Corporation, d/b/a FASHION JEANS    )   **BRIEFING**
17  EXPORTS and d/b/a CPI COMPUTERS )
    & ELECTRONICS; MOHAMAD ALI          )   Dept.: 4
18  KHALIL; KASEM MOHAMAD               )   Judge: Hon. John C. Rayburn, Jr.
    HARKOUS; and DOES 1-10,             )
19                                      )
                Defendants.             )
20  _____ )

21

22

23

24

25

26

27

28
    _____
    SUPPL. FILING RE: OPP. TO EX PARTE APP. AND REQUEST FOR FURTHER BRIEFING
                                    -1-

Dockets.Justia.com

1  TO THE HONORABLE JOHN C. RAYBURN, ALL PARTIES AND THEIR

2  ATTORNEYS OF RECORD:

3      On April 23, 2008, the Court held a telephonic hearing regarding Plaintiff

4  TracFone Wireless, Inc.'s ("TracFone") *Ex Parte* Application for Expedited Discovery

5  and Defendants California Products International, Inc.'s and Mohamad Ali Khalil's

6  (collectively "Defendants") opposition thereto. Defendants submit the following

7  documents in response to the Court's request during the hearing.

8      Attached hereto as Exhibit A is a true and correct copy of 17 U.S.C. § 1201

9  ("Section 1201") of the Digital Millennium Copyright Act ("DMCA"), which sets forth

10  the prohibition against circumvention of technological measures that control access to

11  copyrighted works at Section 1201(a)(1).

12      Attached hereto as Exhibit B is a true and correct copy of 37 Code of Federal

13  Regulations § 201.40, which sets forth the exemption to Section 1201.

14      Attached hereto as Exhibit C is a true and correct copy of Judge Andrew J.

15  Guilford's January 30, 2008 [In Chambers] Order Denying Plaintiffs' Ex Parte

16  Application to Compel Compliance with Discovery, and Setting Hearing for OSC re:

17  Civil Contempt in the matter of Tracfone Wireless, Inc. v. Platform Enterprises, et al.,

18  Case No. CV-1460 AG (MLGx) (Judge Guilford discharged the Order to Show Cause

19  by order dated April 14, 2008).

20      The Court requested that Defendants inform the Court if they wished to provide

21  any further briefing on this matter. If the Court is so inclined, Defendants request the

22  //

23  //

24  //

25  //

26

27

28

1 | opportunity to provide further briefing on the DMCA and California authority

2 | regarding Tracfone's claims that unlocking cell phones is improper and/or illegal.

3

4 | DATED: April 24, 2008          BYRNE & NIXON, LLP

5 | By:  /s/  Daniel V. Nixon

6 |          Daniel V. Nixon
              Cathrynne D. Dale

7 | Attorneys for Defendants California Products
      International Inc. & Mohamad Ali Khalil

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A


▷

**Effective: November 29, 1999**

United States Code Annotated Currentness
  Title 17. Copyrights (Refs & Annos)
    ▧ Chapter 12. Copyright Protection and Management Systems
      → **§ 1201. Circumvention of copyright protection systems**

**(a) Violations regarding circumvention of technological measures.--(1)(A)**No person shall circumvent a technological measure that effectively controls access to a work protected under this title. The prohibition contained in the preceding sentence shall take effect at the end of the 2-year period beginning on the date of the enactment of this chapter.

**(B)** The prohibition contained in subparagraph (A) shall not apply to persons who are users of a copyrighted work which is in a particular class of works, if such persons are, or are likely to be in the succeeding 3-year period, adversely affected by virtue of such prohibition in their ability to make noninfringing uses of that particular class of works under this title, as determined under subparagraph (C).

**(C)** During the 2-year period described in subparagraph (A), and during each succeeding 3-year period, the Librarian of Congress, upon the recommendation of the Register of Copyrights, who shall consult with the Assistant Secretary for Communications and Information of the Department of Commerce and report and comment on his or her views in making such recommendation, shall make the determination in a rulemaking proceeding for purposes of subparagraph (B) of whether persons who are users of a copyrighted work are, or are likely to be in the succeeding 3-year period, adversely affected by the prohibition under subparagraph (A) in their ability to make noninfringing uses under this title of a particular class of copyrighted works. In conducting such rulemaking, the Librarian shall examine--

  **(i)** the availability for use of copyrighted works;

  **(ii)** the availability for use of works for nonprofit archival, preservation, and educational purposes;

  **(iii)** the impact that the prohibition on the circumvention of technological measures applied to copyrighted works has on criticism, comment, news reporting, teaching, scholarship, or research;

  **(iv)** the effect of circumvention of technological measures on the market for or value of copyrighted works; and

  **(v)** such other factors as the Librarian considers appropriate.

**(D)** The Librarian shall publish any class of copyrighted works for which the Librarian has determined, pursuant to the rulemaking conducted under subparagraph (C), that noninfringing uses by persons who are users of a copyrighted work are, or are likely to be, adversely affected, and the prohibition contained in subparagraph (A) shall not apply to such users with respect to such class of works for the ensuing 3-year period.

**(E)** Neither the exception under subparagraph (B) from the applicability of the prohibition contained in subparagraph (A), nor any determination made in a rulemaking conducted under subparagraph (C), may be used as a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit   A
Page   4

defense in any action to enforce any provision of this title other than this paragraph.

(2) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that--

(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;

(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

(3) As used in this subsection--

(A) to "circumvent a technological measure" means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner; and

(B) a technological measure "effectively controls access to a work" if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.

(b) **Additional violations.--(1)** No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that--

(A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;

(B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

(2) As used in this subsection--

(A) to "circumvent protection afforded by a technological measure" means avoiding, bypassing, removing, deactivating, or otherwise impairing a technological measure; and

(B) a technological measure "effectively protects a right of a copyright owner under this title" if the measure, in the ordinary course of its operation, prevents, restricts, or otherwise limits the exercise of a right of a copyright owner under this title.

(c) **Other rights, etc., not affected.--(1)** Nothing in this section shall affect rights, remedies, limitations, or defenses

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to copyright infringement, including fair use, under this title.

(2) Nothing in this section shall enlarge or diminish vicarious or contributory liability for copyright infringement in connection with any technology, product, service, device, component, or part thereof.

(3) Nothing in this section shall require that the design of, or design and selection of parts and components for, a consumer electronics, telecommunications, or computing product provide for a response to any particular technological measure, so long as such part or component, or the product in which such part or component is integrated, does not otherwise fall within the prohibitions of subsection (a)(2) or (b)(1).

(4) Nothing in this section shall enlarge or diminish any rights of free speech or the press for activities using consumer electronics, telecommunications, or computing products.

(d) **Exemption for nonprofit libraries, archives, and educational institutions.--**(1) A nonprofit library, archives, or educational institution which gains access to a commercially exploited copyrighted work solely in order to make a good faith determination of whether to acquire a copy of that work for the sole purpose of engaging in conduct permitted under this title shall not be in violation of subsection (a)(1)(A). A copy of a work to which access has been gained under this paragraph--

(A) may not be retained longer than necessary to make such good faith determination; and

(B) may not be used for any other purpose.

(2) The exemption made available under paragraph (1) shall only apply with respect to a work when an identical copy of that work is not reasonably available in another form.

(3) A nonprofit library, archives, or educational institution that willfully for the purpose of commercial advantage or financial gain violates paragraph (1)--

(A) shall, for the first offense, be subject to the civil remedies under section 1203; and

(B) shall, for repeated or subsequent offenses, in addition to the civil remedies under section 1203, forfeit the exemption provided under paragraph (1).

(4) This subsection may not be used as a defense to a claim under subsection (a)(2) or (b), nor may this subsection permit a nonprofit library, archives, or educational institution to manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, component, or part thereof, which circumvents a technological measure.

(5) In order for a library or archives to qualify for the exemption under this subsection, the collections of that library or archives shall be--

(A) open to the public; or

(B) available not only to researchers affiliated with the library or archives or with the institution of which it is a part, but also to other persons doing research in a specialized field.

(e) **Law enforcement, intelligence, and other government activities.--**This section does not prohibit any lawfully authorized investigative, protective, information security, or intelligence activity of an officer, agent, or employee of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit A
Page 6

the United States, a State, or a political subdivision of a State, or a person acting pursuant to a contract with the United States, a State, or a political subdivision of a State. For purposes of this subsection, the term "information security" means activities carried out in order to identify and address the vulnerabilities of a government computer, computer system, or computer network.

(f) **Reverse engineering.--(1)** Notwithstanding the provisions of subsection (a)(1)(A), a person who has lawfully obtained the right to use a copy of a computer program may circumvent a technological measure that effectively controls access to a particular portion of that program for the sole purpose of identifying and analyzing those elements of the program that are necessary to achieve interoperability of an independently created computer program with other programs, and that have not previously been readily available to the person engaging in the circumvention, to the extent any such acts of identification and analysis do not constitute infringement under this title.

(2) Notwithstanding the provisions of subsections (a)(2) and (b), a person may develop and employ technological means to circumvent a technological measure, or to circumvent protection afforded by a technological measure, in order to enable the identification and analysis under paragraph (1), or for the purpose of enabling interoperability of an independently created computer program with other programs, if such means are necessary to achieve such interoperability, to the extent that doing so does not constitute infringement under this title.

(3) The information acquired through the acts permitted under paragraph (1), and the means permitted under paragraph (2), may be made available to others if the person referred to in paragraph (1) or (2), as the case may be, provides such information or means solely for the purpose of enabling interoperability of an independently created computer program with other programs, and to the extent that doing so does not constitute infringement under this title or violate applicable law other than this section.

(4) For purposes of this subsection, the term "interoperability" means the ability of computer programs to exchange information, and of such programs mutually to use the information which has been exchanged.

(g) **Encryption research.--**

(1) **Definitions.--**For purposes of this subsection--

(A) the term "encryption research" means activities necessary to identify and analyze flaws and vulnerabilities of encryption technologies applied to copyrighted works, if these activities are conducted to advance the state of knowledge in the field of encryption technology or to assist in the development of encryption products; and

(B) the term "encryption technology" means the scrambling and descrambling of information using mathematical formulas or algorithms.

(2) **Permissible acts of encryption research.--**Notwithstanding the provisions of subsection (a)(1)(A), it is not a violation of that subsection for a person to circumvent a technological measure as applied to a copy, phonorecord, performance, or display of a published work in the course of an act of good faith encryption research if--

(A) the person lawfully obtained the encrypted copy, phonorecord, performance, or display of the published work;

(B) such act is necessary to conduct such encryption research;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit A
Page 7

(C) the person made a good faith effort to obtain authorization before the circumvention; and

(D) such act does not constitute infringement under this title or a violation of applicable law other than this section, including section 1030 of title 18 and those provisions of title 18 amended by the Computer Fraud and Abuse Act of 1986.

(3) **Factors in determining exemption.**--In determining whether a person qualifies for the exemption under paragraph (2), the factors to be considered shall include--

(A) whether the information derived from the encryption research was disseminated, and if so, whether it was disseminated in a manner reasonably calculated to advance the state of knowledge or development of encryption technology, versus whether it was disseminated in a manner that facilitates infringement under this title or a violation of applicable law other than this section [17 U.S.C.A. § 1 et seq.], including a violation of privacy or breach of security;

(B) whether the person is engaged in a legitimate course of study, is employed, or is appropriately trained or experienced, in the field of encryption technology; and

(C) whether the person provides the copyright owner of the work to which the technological measure is applied with notice of the findings and documentation of the research, and the time when such notice is provided.

(4) **Use of technological means for research activities.**--Notwithstanding the provisions of subsection (a)(2), it is not a violation of that subsection for a person to--

(A) develop and employ technological means to circumvent a technological measure for the sole purpose of that person performing the acts of good faith encryption research described in paragraph (2); and

(B) provide the technological means to another person with whom he or she is working collaboratively for the purpose of conducting the acts of good faith encryption research described in paragraph (2) or for the purpose of having that other person verify his or her acts of good faith encryption research described in paragraph (2).

(5) **Report to Congress.**--Not later than 1 year after the date of the enactment of this chapter [17 U.S.C. 1201 et seq.], the Register of Copyrights and the Assistant Secretary for Communications and Information of the Department of Commerce shall jointly report to the Congress on the effect this subsection has had on--

(A) encryption research and the development of encryption technology;

(B) the adequacy and effectiveness of technological measures designed to protect copyrighted works; and

(C) protection of copyright owners against the unauthorized access to their encrypted copyrighted works.

The report shall include legislative recommendations, if any.

(h) **Exceptions regarding minors.**--In applying subsection (a) to a component or part, the court may consider the necessity for its intended and actual incorporation in a technology, product, service, or device, which--

Exhibit A
Page 8

(1) does not itself violate the provisions of this title; and

(2) has the sole purpose to prevent the access of minors to material on the Internet.

**(i) Protection of personally identifying information.**--

(1) **Circumvention permitted.**--Notwithstanding the provisions of subsection (a)(1)(A), it is not a violation of that subsection for a person to circumvent a technological measure that effectively controls access to a work protected under this title, if--

(A) the technological measure, or the work it protects, contains the capability of collecting or disseminating personally identifying information reflecting the online activities of a natural person who seeks to gain access to the work protected;

(B) in the normal course of its operation, the technological measure, or the work it protects, collects or disseminates personally identifying information about the person who seeks to gain access to the work protected, without providing conspicuous notice of such collection or dissemination to such person, and without providing such person with the capability to prevent or restrict such collection or dissemination;

(C) the act of circumvention has the sole effect of identifying and disabling the capability described in subparagraph (A), and has no other effect on the ability of any person to gain access to any work; and

(D) the act of circumvention is carried out solely for the purpose of preventing the collection or dissemination of personally identifying information about a natural person who seeks to gain access to the work protected, and is not in violation of any other law.

(2) **Inapplicability to certain technological measures.**--This subsection does not apply to a technological measure, or a work it protects, that does not collect or disseminate personally identifying information and that is disclosed to a user as not having or using such capability.

**(j) Security testing.**--

(1) **Definition.**--For purposes of this subsection, the term "security testing" means accessing a computer, computer system, or computer network, solely for the purpose of good faith testing, investigating, or correcting, a security flaw or vulnerability, with the authorization of the owner or operator of such computer, computer system, or computer network.

(2) **Permissible acts of security testing.**--Notwithstanding the provisions of subsection (a)(1)(A), it is not a violation of that subsection for a person to engage in an act of security testing, if such act does not constitute infringement under this title or a violation of applicable law other than this section, including section 1030 of title 18 and those provisions of title 18 amended by the Computer Fraud and Abuse Act of 1986.

(3) **Factors in determining exemption.**--In determining whether a person qualifies for the exemption under paragraph (2), the factors to be considered shall include--

(A) whether the information derived from the security testing was used solely to promote the security of the owner or operator of such computer, computer system or computer network, or shared directly with the developer of such computer, computer system, or computer network; and

Exhibit A
Page 9

**(B)** whether the information derived from the security testing was used or maintained in a manner that does not facilitate infringement under this title or a violation of applicable law other than this section, including a violation of privacy or breach of security.

**(4) Use of technological means for security testing.**--Notwithstanding the provisions of subsection (a)(2), it is not a violation of that subsection for a person to develop, produce, distribute or employ technological means for the sole purpose of performing the acts of security testing described in subsection (2), [FN1] provided such technological means does not otherwise violate section [FN2] (a)(2).

**(k) Certain analog devices and certain technological measures.**--

**(1) Certain analog devices.**--

**(A)** Effective 18 months after the date of the enactment of this chapter, no person shall manufacture, import, offer to the public, provide or otherwise traffic in any--

**(i)** VHS format analog video cassette recorder unless such recorder conforms to the automatic gain control copy control technology;

**(ii)** 8mm format analog video cassette camcorder unless such camcorder conforms to the automatic gain control technology;

**(iii)** Beta format analog video cassette recorder, unless such recorder conforms to the automatic gain control copy control technology, except that this requirement shall not apply until there are 1,000 Beta format analog video cassette recorders sold in the United States in any one calendar year after the date of the enactment of this chapter;

**(iv)** 8mm format analog video cassette recorder that is not an analog video cassette camcorder, unless such recorder conforms to the automatic gain control copy control technology, except that this requirement shall not apply until there are 20,000 such recorders sold in the United States in any one calendar year after the date of the enactment of this chapter; or

**(v)** analog video cassette recorder that records using an NTSC format video input and that is not otherwise covered under clauses (i) through (iv), unless such device conforms to the automatic gain control copy control technology.

**(B)** Effective on the date of the enactment of this chapter, no person shall manufacture, import, offer to the public, provide or otherwise traffic in--

**(i)** any VHS format analog video cassette recorder or any 8mm format analog video cassette recorder if the design of the model of such recorder has been modified after such date of enactment so that a model of recorder that previously conformed to the automatic gain control copy control technology no longer conforms to such technology; or

**(ii)** any VHS format analog video cassette recorder, or any 8mm format analog video cassette recorder that is not an 8mm analog video cassette camcorder, if the design of the model of such recorder has been modified after such date of enactment so that a model of recorder that previously conformed to the four-line colorstripe copy control technology no longer conforms to such technology.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Manufacturers that have not previously manufactured or sold a VHS format analog video cassette recorder, or an 8mm format analog cassette recorder, shall be required to conform to the four-line colorstripe copy control technology in the initial model of any such recorder manufactured after the date of the enactment of this chapter, and thereafter to continue conforming to the four-line colorstripe copy control technology. For purposes of this subparagraph, an analog video cassette recorder "conforms to" the four-line colorstripe copy control technology if it records a signal that, when played back by the playback function of that recorder in the normal viewing mode, exhibits, on a reference display device, a display containing distracting visible lines through portions of the viewable picture.

**(2) Certain encoding restrictions.**--No person shall apply the automatic gain control copy control technology or colorstripe copy control technology to prevent or limit consumer copying except such copying--

**(A)** of a single transmission, or specified group of transmissions, of live events or of audiovisual works for which a member of the public has exercised choice in selecting the transmissions, including the content of the transmissions or the time of receipt of such transmissions, or both, and as to which such member is charged a separate fee for each such transmission or specified group of transmissions;

**(B)** from a copy of a transmission of a live event or an audiovisual work if such transmission is provided by a channel or service where payment is made by a member of the public for such channel or service in the form of a subscription fee that entitles the member of the public to receive all of the programming contained in such channel or service;

**(C)** from a physical medium containing one or more prerecorded audiovisual works; or

**(D)** from a copy of a transmission described in subparagraph (A) or from a copy made from a physical medium described in subparagraph (C).

In the event that a transmission meets both the conditions set forth in subparagraph (A) and those set forth in subparagraph (B), the transmission shall be treated as a transmission described in subparagraph (A).

**(3) Inapplicability.**--This subsection shall not--

**(A)** require any analog video cassette camcorder to conform to the automatic gain control copy control technology with respect to any video signal received through a camera lens;

**(B)** apply to the manufacture, importation, offer for sale, provision of, or other trafficking in, any professional analog video cassette recorder; or

**(C)** apply to the offer for sale or provision of, or other trafficking in, any previously owned analog video cassette recorder, if such recorder was legally manufactured and sold when new and not subsequently modified in violation of paragraph (1)(B).

**(4) Definitions.**--For purposes of this subsection:

**(A)** An "analog video cassette recorder" means a device that records, or a device that includes a function that records, on electromagnetic tape in an analog format the electronic impulses produced by the video and audio portions of a television program, motion picture, or other form of audiovisual work.

Exhibit __A__
Page __II__

**(B)** An "analog video cassette camcorder" means an analog video cassette recorder that contains a recording function that operates through a camera lens and through a video input that may be connected with a television or other video playback device.

**(C)** An analog video cassette recorder "conforms" to the automatic gain control copy control technology if it--

(i) detects one or more of the elements of such technology and does not record the motion picture or transmission protected by such technology; or

(ii) records a signal that, when played back, exhibits a meaningfully distorted or degraded display.

**(D)** The term "professional analog video cassette recorder" means an analog video cassette recorder that is designed, manufactured, marketed, and intended for use by a person who regularly employs such a device for a lawful business or industrial use, including making, performing, displaying, distributing, or transmitting copies of motion pictures on a commercial scale.

**(E)** The terms "VHS format", "8mm format", "Beta format", "automatic gain control copy control technology", "colorstripe copy control technology", "four-line version of the colorstripe copy control technology", and "NTSC" have the meanings that are commonly understood in the consumer electronics and motion picture industries as of the date of the enactment of this chapter.

**(5) Violations.**--Any violation of paragraph (1) of this subsection shall be treated as a violation of subsection (b)(1) of this section. Any violation of paragraph (2) of this subsection shall be deemed an "act of circumvention" for the purposes of section 1203(c)(3)(A) of this chapter.

CREDIT(S)

(Added Pub.L. 105-304, Title I, § 103(a), Oct. 28, 1998, 112 Stat. 2863, and amended Pub.L. 106-113, Div. B, § 1000(a)(9) [Title V, § 5006], Nov. 29, 1999, 113 Stat. 1536, 1501A-594.)

[FN1] So in original. Probably should be "subsection (a)(2)".

[FN2] So in original. Probably should be "subsection".

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1999 Acts. Statement by President, see 1999 U.S. Code Cong. and Adm. News, p. 290.

References in Text

The date of enactment of this chapter, referred to in subsecs. (a)(1)(B), (g)(5), and (k)(1), is Oct. 28, 1998, the date of enactment of Pub.L. 105-304, which enacted this chapter.

The Computer Fraud and Abuse Act of 1986, referred to in subsecs. (g)(2)(D) and (j)(2) of the text, is Pub.L. 99-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit __A__
Page __12__

474, Oct. 16, 1986, 100 Stat. 1213, which amended section 1030 of Title 18.

Amendments

1999 Amendments. Subsec. (a)(1)(C). Pub.L. 106-113 [§ 5006], struck out "on the record" following "in a rulemaking proceeding".

Effective and Applicability Provisions

1998 Acts. Title I (sections 101 to 105) of Pub.L. 105-304 and the amendments made by this title to take effect on Oct. 28, 1998, except as otherwise provided in this title, see section 105(a) of Pub.L. 105-304, set out as a note under section 101 of this title.

LAW REVIEW COMMENTARIES

Building a reliable semicommons of creative works: Enforcement of creative commons licenses and limited abandonment of copyright. Lydia Pallas Loren, 14 Geo. Mason L. Rev. 271 (2007).

Catch 1201: A legislative history and content analysis of the DMCA exemption proceedings. Bill D. Herman, Oscar H. Gandy, Jr., 24 Cardozo Arts & Ent. L.J. 121 (2006).

Coming soon to pay-for-view: How the Digital Millenium Copyright Act enables digital content owners to circumvent educational fair use. Jeff Sharp, 40 Am.Bus.L.J. 1 (2002).

Copyright, Congress, and constitutionality: How the Digital Millennium Copyright Act goes too far. Note, 79 Notre Dame L. Rev. 2115 (2004).

Curbing copyright infringement in cyberspace: Using MediaKey to stop the bleeding. John. R. Perkins, Jr., 21 J. Marshall J. Computer & Info. L. 325 (2003).

The death of copyright: Digital technology, private copying, and the Digital Millennium Copyright Act. Glynn S. Lunney, Jr., 87 Va. L.Rev. 813 (2001).

Digital millennium? Technological protections for copyright on the internet. Brian Leubitz, 11 Tex. Intell. Prop. L.J. 417 (2003).

*The Digital Millennium Copyright Act*: A review of the law and the court's interpretation. Neil A. Benchell, 21 J. Marshall J. Computer & Info. L. 1 (2002).

The Digital Millennium Copyright Act and non-infringing use: Can mandatory labeling of digital media products keep the sky from falling? Note, 80 Chi.-Kent L. Rev. 515 (2005).

The DMCA and original equipment manufacturers: Let consumers decide. Comment, 56 DePaul L. Rev. 153 (2006).

Encryption use: Law and anarchy on the digital frontier. Comment, 41 Hous. L. Rev. 1625 (2005).

The escalating copyright wars. Peter K. Yu, 32 Hofstra L. Rev. 907 (2004).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit A
Page 13

Expanding the DMCA: The importance of regulating computer code. Comment, 21 J. Marshall J. Computer & Info. L. 567 (2003).

File-sharing tools and copyright law: A study of In re Aimster Copyright Litigation and MGM Studios, Inc. v. Grokster, Ltd. Comment, 35 Loy. U. Chi. L.J. 389 (2003).

Has the Digital Millenium Copyright Act really created a new exclusive right of access?: attempting to reach a balance between users' and content providers' rights. Michael Landau, 49 J. Copyright Soc'y U.S.A. 277 (2001).

Indirect liability for copyright infringement: An economic perspective. Douglas Lichtman and William Landes, 16 Harv. J.L. & Tech. 395 (2003).

IP's problem child: Shifting the paradigms for software protection. Jacqueline D. Lipton, 58 Hastings L.J. 205 (2006).

Law regulating code regulating law. Lawrence Lessig, 35 Loy. U. Chi. L.J. 1 (2003).

Linking and framing on the Internet: recent developments and the boundaries of fair use. Michael K. Cantwell, 49 J. Copr. Soc'y 853 (2002).

Mixed metaphors in cyberspace: Property in information and information systems. Jacqueline Lipton, 35 Loy. U. Chi. L.J. 235 (2003).

One step forward, two steps back: An historical analysis of copyright liability. Matt Jackson, 20 Cardozo Arts & Ent.L.J. 367 (2002).

A proposal in hindsight: Restoring copyright's delicate balance by reworking 17 U.S.C. § 1201. Daniel S. Hurwitz, 13 UCLA Ent. L. Rev. 263 (2006).

Reconsidering the DMCA. R. Polk Wagner, 42 Hous. L. Rev. 1107 (2005).

Reconstructing the software license. Michael J. Madison, 35 Loy. U. Chi. L.J. 275 (2003).

RIAA v. Verizon: Applying the subpoena provision of the DMCA. Note, 19 Berkeley Tech. L.J. 405 (2004).

The secret is out: Patent law preempts mass market license terms barring reverse engineering for interoperability purposes. Daniel Laster, 58 Baylor L. Rev. 621 (2006).

Solving the digital piracy puzzle: Disaggregating fair use from the DMCA's anti-device provisions. Jacqueline D. Lipton, 19 Harv. J.L. & Tech. 111 (2005).

The unusual suspects: Unscrambling satellite piracy. David V. Lampman, II, 22 Cardozo Arts & Ent. L.J. 553 (2004).

What federal gun control can teach us about the DMCA's anti-trafficking provisions. Alfred C. Yen, 2003 Wis.L.Rev. 649 (2003).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit A
Page 14

When code isn't law. Tim Wu, 89 Va. L.Rev. 679 (2003).

LIBRARY REFERENCES

American Digest System

Copyrights and Intellectual Property ☜67.3.

Key Number System Topic No. 99.

Corpus Juris Secundum

CJS Copyrights and Intellectual Property § 63, Circumvention of Copyright.
CJS Copyrights and Intellectual Property § 140, Circumvention of Copyright.

RESEARCH REFERENCES

ALR Library

16 ALR, Fed. 2nd Series 1, Form and Sufficiency of Copyright Notice.

179 ALR, Fed. 319, Validity, Construction, and Application of Digital Millennium Copyright Act (Pub. L. No. 105-304, 112 Stat. 2860 (1998)).

98 ALR 5th 1, Advertising Injury Insurance.

Encyclopedias

20 Am. Jur. Proof of Facts 3d 431, Copyright Infringement of Literary Works, Including Compilations and Other Fact-Based Works.

50 Am. Jur. Proof of Facts 3d 449, Disqualification of Trial Judge for Cause.

52 Am. Jur. Proof of Facts 3d 107, Proof of Copyright Infringement by Unauthorized Use of Software.

63 Am. Jur. Proof of Facts 3d 1, Proof of Copyright Infringement by File Sharing.

54 Am. Jur. Trials 261, Defending the Software Infringement Case.

77 Am. Jur. Trials 449, Copyright Infringement Litigation.

Am. Jur. 2d Copyright and Literary Property § 203, Protection Under Other Acts.

Forms

25A West's Legal Forms § 11.16, Digital Millennium Copyright Act.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit A
Page 15

27A West's Legal Forms § 10.32, End User License Agreement.

Treatises and Practice Aids

Callmann on Unfair Compet., TMs, & Monopolies § 22:23, Use of the Plaintiff's Mark to Refer to Genuine or Partly Genuine Goods--For the Purpose of Selling Genuine Goods (Risk of Confusion)--Parallel Importation.

Eckstrom's Licensing in Foreign & Domestic Ops. § 12:33, Digital Millennium Copyright Act.

Federal Procedure, Lawyers Edition § 18:284, Civil-Enforcement Action.

Federal Procedure, Lawyers Edition § 18:285, Civil-Enforcement Action--Damages.

Federal Procedure, Lawyers Edition § 18:286, Criminal Prosecutions.

Patent Law Fundamentals § 6:8, Copyright as the Exclusive Right to Copy--Copyright Distinct from the Physical Object--Internet Use as Generating a "Copy" and as Constituting Copyright Infringement.

Patent Law Fundamentals § 6:93, Exploiting Copyrights--Recourse Against Circumvention--Prohibition.

Patent Law Fundamentals § 6:94, Exploiting Copyrights--Recourse Against Circumvention--Effective Dates.

Patent Law Fundamentals § 6:96, Exploiting Copyrights--Recourse Against Circumvention--Exceptions and Exemptions--Classes of Works Exempted by Administrative Rule.

Patent Law Fundamentals § 6:97, Exploiting Copyrights--Recourse Against Circumvention--Exceptions and Exemptions--Nonprofit Libraries, Archives, and Educational Institutions.

Patent Law Fundamentals § 6:98, Exploiting Copyrights--Recourse Against Circumvention--Exceptions and Exemptions--Law Enforcement, Intelligence, and Other Government Activities.

Patent Law Fundamentals § 6:99, Exploiting Copyrights--Recourse Against Circumvention--Exceptions and Exemptions--Reverse Engineering.

Patent Law Fundamentals § 6:100, Exploiting Copyrights--Recourse Against Circumvention--Exceptions and Exemptions--Reverse Engineering--Encryption Research.

Patent Law Fundamentals § 6:101, Exploiting Copyrights--Recourse Against Circumvention--Exceptions and Exemptions--Reverse Engineering--Personally Identifying Information.

Patent Law Fundamentals § 6:102, Exploiting Copyrights--Recourse Against Circumvention--Exceptions and Exemptions--Reverse Engineering--Security Testing.

Patent Law Fundamentals § 6:104, Exploiting Copyrights--Recourse Against Circumvention--Remedies for Violation of the Anti-Circumvention Prohibition--Civil Remedies.

Patent Law Fundamentals § 6:110, Exploiting Copyrights--Recourse Against Interference With Copyright Management Information--Remedies.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Patent Law Fundamentals § 6:136, International and Foreign Copyright Protection--Protection of American Authors and Their Works Abroad--Wipo Copyright Treaty.

Trade Secrets Law § 9:12, Computer Code as Free Speech.

West's Federal Administrative Practice § 4001, The Copyright Act of 1976.

NOTES OF DECISIONS

Circumvention 7
Construction 2
Construction with other laws 3
Effectively controlled access 6
Elements of violation 4
Exceptions 11
Hyperlink inclusion 9
Interoperability 8
Persons liable 10
Technological measures 5
Trafficking 7a
Validity 1

1. Validity

Digital Millennium Copyright Act's anti-circumvention device provisions are not fundamentally inconsistent with Intellectual Property Clause; protecting exclusive rights granted to copyright owners against unlawful piracy by preventing trafficking in tools that would enable widespread piracy and unlawful infringement is consistent with the purpose of the Intellectual Property Clause's grant to Congress of the power to "promote the useful arts and sciences" by granting exclusive rights to authors in their writings. U.S. v. Elcom Ltd., N.D.Cal.2002, 203 F.Supp.2d 1111, 62 U.S.P.Q.2d 1736. Copyrights And Intellectual Property ☜ 2; Copyrights And Intellectual Property ☜ 67.3

Digital Millennium Copyright Act (DMCA) provision prohibiting trafficking in any technology designed to circumvent technological measure controlling access to copyrighted work constituted content-neutral restriction on speech as applied to computer program that decrypted digitally encrypted movies on digital versatile disks (DVDs); although computer code expressed programmer's ideas, it had additional, non-speech aspect in that it contained instructions that caused computer to perform sequence of tasks that, in the aggregate, circumvented DVD encryption, and Congress' concern in enacting DMCA's anti-trafficking provision was suppression of copyright piracy and infringement, not to regulate expression of ideas inherent in decryption computer code. Universal City Studios, Inc. v. Reimerdes, S.D.N.Y.2000, 111 F.Supp.2d 294, 55 U.S.P.Q.2d 1873, entered 111 F.Supp.2d 346, affirmed 273 F.3d 429, 60 U.S.P.Q.2d 1953. Constitutional Law ☜ 1603; Copyrights And Intellectual Property ☜ 2

Digital Millennium Copyright Act (DMCA) provision prohibiting trafficking in any technology designed to circumvent technological measure controlling access to copyrighted work did not violate First Amendment as applied to owners of Internet web-site that made available for downloading computer software enabling decryption of digitally encrypted movies on digital versatile disks (DVDs) and contained hyperlinks to other web-sites that made decryption software available; DMCA provision was content-neutral, it furthered important governmental interest of protected copyrighted works stored on digital media, and incidental restraint on expression and non-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit  A
Page  17

infringing fair use of encrypted material was no broader than necessary to accomplish goals of preventing infringement and promoting availability of content in digital form. Universal City Studios, Inc. v. Reimerdes, S.D.N.Y.2000, 111 F.Supp.2d 294, 55 U.S.P.Q.2d 1873, entered 111 F.Supp.2d 346, affirmed 273 F.3d 429, 60 U.S.P.Q.2d 1953. Constitutional Law ☞ 2151; Copyrights And Intellectual Property ☞ 2; Constitutional Law ☞ 2147

Owners of Internet web-site that made available computer software that enabled decryption of digitally encrypted movies on digital versatile disks (DVDs) failed to establish that Digital Millennium Copyright Act (DMCA) provision prohibiting trafficking in technology designed to circumvent technological measure controlling access to copyrighted work was overly broad, in violation of First Amendment, even though anti-trafficking provision might prevent technologically unsophisticated persons from copying portions of DVD movie for noninfringing, fair use; question of whether anti-trafficking provision affected rights of "fair use" community could not be decided without evidence regarding circumstances of each member of community or similarly situated groups of members, there was no reason to assume that prospective fair users would be deterred from asserting their rights by fear of sanctions imposed by DMCA, and issue concerned technology that was principally functional in nature rather than pure speech. Universal City Studios, Inc. v. Reimerdes, S.D.N.Y.2000, 111 F.Supp.2d 294, 55 U.S.P.Q.2d 1873, entered 111 F.Supp.2d 346, affirmed 273 F.3d 429, 60 U.S.P.Q.2d 1953. Constitutional Law ☞ 2151; Copyrights And Intellectual Property ☞ 2; Constitutional Law ☞ 2147

Internet web-site owners could be enjoined, for violating Digital Millennium Copyright Act (DMCA) provision prohibiting trafficking in technology designed to circumvent technological measure controlling access to copyrighted work, from providing hyperlinks to other web-sites containing computer software that enable decryption of digitally encrypted movies on digital versatile disks (DVDs); DMCA did not violate First Amendment as applied to defendants, since they knew that encryption software was posted at linked-to sites, learned in action brought against them by movie copyright holders that posting software violated DMCA, and stated on their site that they maintained links in order to promote dissemination of decryption software in effort to defeat effective judicial relief. Universal City Studios, Inc. v. Reimerdes, S.D.N.Y.2000, 111 F.Supp.2d 294, 55 U.S.P.Q.2d 1873, entered 111 F.Supp.2d 346, affirmed 273 F.3d 429, 60 U.S.P.Q.2d 1953. Constitutional Law ☞ 2151; Copyrights And Intellectual Property ☞ 2; Copyrights And Intellectual Property ☞ 86

2. Construction

Copyright owner's right to protect against unauthorized access, provided under Digital Millennium Copyright Act (DMCA), is right separate and distinct from right to protect against violations of exclusive copyright rights such as reproduction and distribution. Lexmark Intern., Inc. v. Static Control Components, Inc., E.D.Ky.2003, 253 F.Supp.2d 943, 66 U.S.P.Q.2d 1405, vacated 387 F.3d 522, 72 U.S.P.Q.2d 1839, rehearing denied , rehearing en banc denied. Copyrights And Intellectual Property ☞ 67.3

3. Construction with other laws

Digital Millennium Copyright Act (DMCA) as part of the Copyright Act, does not limit the scope of the antitrust laws, either explicitly or implicitly. Chamberlain Group, Inc. v. Skylink Technologies, Inc., C.A.Fed. (Ill.) 2004, 381 F.3d 1178, 72 U.S.P.Q.2d 1225, rehearing and rehearing en banc denied , certiorari denied 125 S.Ct. 1669, 544 U.S. 923, 161 L.Ed.2d 481. Copyrights And Intellectual Property ☞ 2; Antitrust And Trade Regulation ☞ 524

4. Elements of violation

A plaintiff alleging a violation of Digital Millennium Copyright Act's (DMCA) anticircumvention provision must prove: (1) ownership of a valid copyright on a work (2) effectively controlled by a technological measure, which has been circumvented (3) that third parties can now access (4) without authorization, in a manner that (5) infringes or

Exhibit A
Page 18

facilitates infringing a right protected by the Copyright Act, because of a product that (6) the defendant either (i) designed or produced primarily for circumvention; (ii) made available despite only limited commercial significance other than circumvention; or (iii) marketed for use in circumvention of the controlling technological measure. Chamberlain Group, Inc. v. Skylink Technologies, Inc., C.A.Fed. (Ill.) 2004, 381 F.3d 1178, 72 U.S.P.Q.2d 1225, rehearing and rehearing en banc denied , certiorari denied 125 S.Ct. 1669, 544 U.S. 923, 161 L.Ed.2d 481. Copyrights And Intellectual Property 🔑 67.3

### 5. Technological measures

Virtual private network (VPN) of developer of automated stock-trading computer systems was electronic equivalent to locked door, and thus was protected under provision of Digital Millennium Copyright Act (DMCA) barring circumvention of technological measure that effectively controlled access to protected copyright work. Pearl Investments, LLC v. Standard I/O, Inc., D.Me.2003, 257 F.Supp.2d 326. Copyrights And Intellectual Property 🔑 67.3

### 6. Effectively controlled access

Under anti-circumvention provision of Digital Millennium Copyright Act (DMCA), issue of whether technological measure effectively controlled access to protected copyright work was analyzed solely with reference to how measure worked in the ordinary course of its operation, and therefore fact that programmer had alternative means of access to copyrighted software of computer systems developer, by virtue of having written software and maintained backup file for developer, was irrelevant to question of whether developer's virtual private network (VPN) that allegedly was circumvented by programmer effectively controlled access to developer's software and thus qualified as "technological measure" under DMCA. Pearl Investments, LLC v. Standard I/O, Inc., D.Me.2003, 257 F.Supp.2d 326. Copyrights And Intellectual Property 🔑 67.3

For purposes of Digital Millennium Copyright Act (DMCA) provision prohibiting trafficking in any technology designed to circumvent technological measure effectively controlling access to copyrighted work, encryption system used for movies on digital versatile disks (DVDs) constituted measure that "effectively controlled access" to copyrighted work, regardless of whether 40-bit encryption key on which encryption was based was weak cipher or strong encryption; technological measure would be deemed to effectively control access to protected work so long as its function was to control access. Universal City Studios, Inc. v. Reimerdes, S.D.N.Y.2000, 111 F.Supp.2d 294, 55 U.S.P.Q.2d 1873, entered 111 F.Supp.2d 346, affirmed 273 F.3d 429, 60 U.S.P.Q.2d 1953. Copyrights And Intellectual Property 🔑 67.3

### 7. Circumvention

Computer game purchasers' development of alternative to seller's online gaming service, which allowed other purchasers to access online gaming mode without need for encoded identification key, violated Digital Millennium Copyright Act's (DMCA's) anti-circumvention provision. Davidson & Associates v. Jung, C.A.8 (Mo.) 2005, 422 F.3d 630, 76 U.S.P.Q.2d 1287. Copyrights And Intellectual Property 🔑 67.3

Independent service company employed by purchasers of automated data storage machines did not violate Digital Millennium Copyright Act (DMCA) when it circumvented manufacturer's encryption system in order to gain access to software's fault symptom codes, absent showing that such circumvention facilitated copyright infringement; company's conduct came within safe harbor for software copying done solely for purposes of maintenance and repair. Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Inc., C.A.Fed.2005, 421 F.3d 1307, 76 U.S.P.Q.2d 1065, rehearing denied 431 F.3d 1374, 77 U.S.P.Q.2d 1317. Copyrights And Intellectual Property 🔑 67.3

Exhibit  A
Page  19

Universal transmitter that allowed consumers to access copyrighted software embedded in manufacturer's "rolling code" garage door openers did not violate anticircumvention provision of Digital Millennium Copyright Act (DMCA); access provided by the transmitter did not facilitate the infringement of any right protected by the Copyright Act, which authorized manufacturer's customers to use the copy of its copyrighted software embedded in the openers that they purchased. Chamberlain Group, Inc. v. Skylink Technologies, Inc., C.A.Fed. (Ill.) 2004, 381 F.3d 1178, 72 U.S.P.Q.2d 1225, rehearing and rehearing en banc denied , certiorari denied 125 S.Ct. 1669, 544 U.S. 923, 161 L.Ed.2d 481. Copyrights And Intellectual Property ☜ 67.3

Law firm did not violate Digital Millennium Copyright Act, by taking measures to circumvent technology measure designed to bar Internet access to copyrighted work, when firm's employees made routine request for information, blocking software was malfunctioning, and they were allowed access to images that should have been blocked. Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey, E.D.Pa.2007, 497 F.Supp.2d 627. Copyrights And Intellectual Property ☜ 67.3

Seller of circumvention devices violated Digital Millennium Copyright Act (DMCA) by trafficking in devices that were primarily designed or produced for the purpose of circumventing a video game system's authentication system which otherwise controlled access to software played on the system, including copyright holder's own copyrighted video games; seller's devices could be configured by consumers to allow a copied disc to be played on the video game systems. Sony Computer Entertainment America, Inc. v. Divineo, Inc., N.D.Cal.2006, 457 F.Supp.2d 957, 81 U.S.P.Q.2d 1045. Copyrights And Intellectual Property ☜ 67.3

Decryption software allowed copying of digital versatile discs (DVDs) "avoided" and "bypassed" encoding scheme used by DVD producers, within meaning of Digital Millennium Copyright Act (DMCA) provision proscribing circumvention of copyright protecting measures; although software used authorized decryption keys, it did so without permission. 321 Studios v. Metro Goldwyn Mayer Studios, Inc., N.D.Cal.2004, 307 F.Supp.2d 1085, 70 U.S.P.Q.2d 1028. Copyrights And Intellectual Property ☜ 67.3

Portion of digital versatile disc (DVD) copying software that decoded encrypted data violated Digital Millennium Copyright Act (DMCA) provisions proscribing circumvention of technological measures that controlled access to works and protected rights of copyright owners; software was primarily designed and produced to circumvent encoding scheme, and was marketed to public for use in circumventing scheme. 321 Studios v. Metro Goldwyn Mayer Studios, Inc., N.D.Cal.2004, 307 F.Supp.2d 1085, 70 U.S.P.Q.2d 1028. Copyrights And Intellectual Property ☜ 67.3

Competitor did not "circumvent" technological measure that effectively controlled access to copyrighted work, in violation of Digital Millennium Copyright Act (DMCA), when it obtained and used password issued by provider of Internet website service for tracking advertising information, and allegedly copied features of service in developing its competitive service; required avoiding or bypassing of protective technological measures was not present. I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc., S.D.N.Y.2004, 307 F.Supp.2d 521, 70 U.S.P.Q.2d 1105. Copyrights And Intellectual Property ☜ 67.3

Decryption, by means of computer software, of encrypted movies on digital versatile disks (DVDs) constituted "circumvention" for purposes of Digital Millennium Copyright Act (DMCA) provision prohibiting trafficking in any technology designed to circumvent technological measure controlling access to copyrighted work. Universal City Studios, Inc. v. Reimerdes, S.D.N.Y.2000, 111 F.Supp.2d 294, 55 U.S.P.Q.2d 1873, entered 111 F.Supp.2d 346, affirmed 273 F.3d 429, 60 U.S.P.Q.2d 1953. Copyrights And Intellectual Property ☜ 67.3

Digital Millennium Copyright Act (DMCA) provision prohibiting trafficking in any "technology" designed for purpose of circumventing technological measure controlling access to copyrighted work applied to computer code for software that decrypted movies on digital versatile disks (DVDs), and was not limited to "black box" devices.

Exhibit A
Page 20

Universal City Studios, Inc. v. Reimerdes, S.D.N.Y.2000, 111 F.Supp.2d 294, 55 U.S.P.Q.2d 1873, entered 111 F.Supp.2d 346, affirmed 273 F.3d 429, 60 U.S.P.Q.2d 1953. Copyrights And Intellectual Property ☜ 67.3

Duplicator of DVD discs did not violate Copyright Act by producing pirated version of copyrighted motion picture; duplicator did not have equipment to produce discs having characteristics of pirated disc and there was no showing of how duplicator obtained digital original of motion picture needed to make duplicates. Arclightz and Films Pvt. Ltd. v. Video Palace Inc., S.D.N.Y.2003, 67 U.S.P.Q.2d 1152, 2003 WL 21290889, Unreported. Copyrights And Intellectual Property ☜ 83(5)

### 7a. Trafficking

Computer game purchasers' development and distribution of alternative to seller's online gaming service, in order to allow other purchasers to circumvent seller's technological measures controlling access to online gaming mode, violated Digital Millennium Copyright Act's (DMCA's) prohibition against trafficking in circumvention technology. Davidson & Associates v. Jung, C.A.8 (Mo.) 2005, 422 F.3d 630, 76 U.S.P.Q.2d 1287. Copyrights And Intellectual Property ☜ 67.3

### 8. Interoperability

Microchips developed by toner cartridge remanufacturer to circumvent original manufacturer's authentication sequence were not themselves independently created programs, within meaning of exception to Digital Millennium Copyright Act (DMCA) for circumvention devices made solely to allow interoperability; chips contained only circumvention code and copy of original manufacturer's operating code. Lexmark Intern., Inc. v. Static Control Components, Inc., E.D.Ky.2003, 253 F.Supp.2d 943, 66 U.S.P.Q.2d 1405, vacated 387 F.3d 522, 72 U.S.P.Q.2d 1839, rehearing denied , rehearing en banc denied. Copyrights And Intellectual Property ☜ 67.3

### 9. Hyperlink inclusion

Website owners, who included hyperlinks to web-sites created by others that contained computer software that decrypted digitally encrypted copyrighted movies on digital versatile disks (DVDs), violated Digital Millennium Copyright Act (DMCA) provision prohibiting offering to public, providing, or otherwise trafficking in technology designed to circumvent technological measure to control access to copyrighted work, where defendants, who had been enjoined from offering decryption software at their own site for downloading, urged others to post decryption software on their sites in attempt to disseminate software and requested those who posted software to inform them, so that they could include link. Universal City Studios, Inc. v. Reimerdes, S.D.N.Y.2000, 111 F.Supp.2d 294, 55 U.S.P.Q.2d 1873, entered 111 F.Supp.2d 346, affirmed 273 F.3d 429, 60 U.S.P.Q.2d 1953. Copyrights And Intellectual Property ☜ 67.3

### 10. Persons liable

Consent judgment between copyright holder and alleged infringer, in which alleged infringer stipulated to liability under Digital Millennium Copyright Act (DMCA) for sale of circumvention devices, could not be vacated, due to alleged patent infringement by copyright holder with regard to those devices, since alleged patent infringement did not have any bearing in instant case, and alleged infringer's other allegations of misconduct by copyright holder were not supported by evidence, and even if they were true, there was no suggestion that alleged infringer was prejudiced in any way. Sony Computer Entertainment America, Inc. v. Filipiak, N.D.Cal.2005, 406 F.Supp.2d 1068. Copyrights And Intellectual Property ☜ 89(1)

Custom software company could not be held liable to developer of automated stock-trading computer systems for

Exhibit A
Page 21

alleged violation, by company's owner, of Digital Millennium Copyright Act (DMCA), based on owner's alleged circumvention of protections of developer's virtual private network (VPN) to gain unauthorized access to developer's data, including copyrighted software, through creation of tunnel from owner's server to VPN, given evidence that owner's alleged conduct was not undertaken on company's behalf and any use of company's assets was incidental to owner's private purposes. Pearl Investments, LLC v. Standard I/O, Inc., D.Me.2003, 257 F.Supp.2d 326. Copyrights And Intellectual Property ☞ 77

11. Exceptions

Resellers' actions in disabling prepaid wireless telephone provider's copyrighted and proprietary software installed in phones and reselling them as new for unauthorized use outside of its system did not fall within exception to Digital Millennium Copyright Act (DMCA) for computer programs in form of firmware to enable wireless telephone handsets to connect to wireless telephone communication network, where resellers unlocked provider's handsets for purpose of reselling those handsets for profit, and not for sole purpose of lawfully connecting to wireless telephone communication network. TracFone Wireless, Inc. v. Dixon, M.D.Fla.2007, 2007 WL 570540. Copyrights And Intellectual Property ☞ 67.3

17 U.S.C.A. § 1201, 17 USCA § 1201

Current through P.L. 110-201 approved 4-18-08

Copr. (C) 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit _A_
Page_22_

EXHIBIT B



37 C.F.R. § 201.40

**C Effective: November 27, 2006**

Code of Federal Regulations Currentness
  Title 37. Patents, Trademarks, and Copyrights
    Chapter II. Copyright Office, Library of Congress
      ☜ Subchapter A. Copyright Office and Procedures (Refs & Annos)
        ☜ Part 201. General Provisions (Refs & Annos)

→§ **201.40 Exemption to prohibition against circumvention.**

(a) General. This section prescribes the classes of copyrighted works for which the Librarian of Congress has determined, pursuant to 17 U.S.C. 1201(a)(1)(C) and (D), that noninfringing uses by persons who are users of such works are, or are likely to be, adversely affected. The prohibition against circumvention of technological measures that control access to copyrighted works set forth in 17 U.S.C. 1201(a)(1)(A) shall not apply to such users of the prescribed classes of copyrighted works.

(b) Classes of copyrighted works. Pursuant to the authority set forth in 17 U.S.C. 1201(a)(1)(C) and (D), and upon the recommendation of the Register of Copyrights, the Librarian has determined that during the period from November 27, 2006 through October 27, 2009, the prohibition against circumvention of technological measures that effectively control access to copyrighted works set forth in 17 U.S.C. 1201(a)(1)(A) shall not apply to persons who engage in noninfringing uses of the following six classes of copyrighted works:

(1) Audiovisual works included in the educational library of a college or university's film or media studies department, when circumvention is accomplished for the purpose of making compilations of portions of those works for educational use in the classroom by media studies or film professors.

(2) Computer programs and video games distributed in formats that have become obsolete and which require the original media or hardware as a condition of access, when circumvention is accomplished for the purpose of preservation or archival reproduction of published digital works by a library or archive. A format shall be considered obsolete if the machine or system necessary to render perceptible a work stored in that format is no longer manufactured or is no longer reasonably available in the commercial marketplace.

(3) Computer programs protected by dongles that prevent access due to malfunction or damage and which are obsolete. A dongle shall be considered obsolete if it is no longer manufactured or if a replacement or repair is no longer reasonably available in the commercial marketplace.

(4) Literary works distributed in ebook format when all existing ebook editions of the work (including digital text editions made available by authorized entities) contain access controls that prevent the enabling either of the book's read-aloud function or of screen readers that render the text into a specialized format.

(5) Computer programs in the form of firmware that enable wireless telephone handsets to connect to a wireless telephone communication network, when circumvention is accomplished for the sole purpose of lawfully connecting to a wireless telephone communication network.

(6) Sound recordings, and audiovisual works associated with those sound recordings, distributed in compact disc format and protected by technological protection measures that control access to lawfully purchased works and create or exploit security flaws or vulnerabilities that compromise the security of personal computers, when circumvention is accomplished solely for the purpose of good faith testing, investigating, or correcting such security flaws or vulnerabilities.

(c) Definition. "Specialized format," "digital text" and "authorized entities" shall have the same

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Exhibit  B
Page 23

37 C.F.R. § 201.40

meaning as in 17 U.S.C. 121.

[65 FR 64574, Oct. 27, 2000; 68 FR 62018, Oct. 31, 2003; 71 FR 63247, Oct. 30, 2006; 71 FR 68479, Nov. 27, 2006]

SOURCE: 24 FR 4955, June 18, 1959; 50 FR 30170, July 24, 1985; 50 FR 52459, Dec. 24, 1985; 56 FR 7812, 7813, Feb. 26, 1991; 56 FR 27197, June 13, 1991; 56 FR 28959, June 25, 1991; 56 FR 38341, Aug. 13, 1991; 57 FR 3296, Jan. 29, 1992; 57 FR 55465, Nov. 25, 1992; 58 FR 9546, Feb. 22, 1993; 59 FR 12164, March 16, 1994; 59 FR 23981, May 9, 1994; 59 FR 38371, July 28, 1994; 59 FR 67635, Dec. 30, 1994; 60 FR 25998, May 16, 1995; 60 FR 34168, June 30, 1995; 60 FR 50420, Sept. 29, 1995; 60 FR 57937, Nov. 24, 1995; 61 FR 30813, June 18, 1996; 62 FR 18710, April 17, 1997; 62 FR 55739, Oct. 28, 1997; 67 FR 69136, Nov. 15, 2002, unless otherwise noted.

AUTHORITY: 17 U.S.C. 702.; Section 201.10 also issued under 17 U.S.C. 304.

37 C. F. R. § 201.40, **37 CFR § 201.40**

Current through April 17, 2008; 73 FR 20841

Copr. © 2008
Thomson/West

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Exhibit B
Page 24

EXHIBIT C

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 07-1460 AG (MLGx) | Date | January 30, 2008 |
|---|---|---|---|

| Title | TRACFONE WIRELESS, INC., v. PLATFORM ENTERPRISES, ET AL. |
|---|---|

| Present: The Honorable | ANDREW J. GUILFORD | | |
|---|---|---|---|
| Lisa Bredahl | | None Present | |
| Deputy Clerk | | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| Not Present | | Not Present | |

**Proceedings:**    [IN CHAMBERS] ORDER DENYING PLAINTIFFS' EX PARTE APPLICATION TO COMPEL COMPLIANCE WITH DISCOVERY, AND SETTING HEARING FOR OSC RE: CIVIL CONTEMPT

TracFone Wireless, Inc., ("Plaintiff") has filed an Emergency Ex Parte Application (Ex Parte Application) requesting that Platform Enterprises, Hassan Essayli, and Ali Essayli ("Defendants") be compelled to comply with the Court's January 4, 2008 Order ("Order") permitting "limited discovery" on an expedited basis, and that Defendants be ordered to show cause why they should not be held in contempt for failure to preserve evidence as required by the Order.

In the Order, the Court granted Plaintiff's request that it be allowed to "immediately begin limited discovery" by (1) compelling Defendants to produce certain responsive documents, and (2) compelling Defendants to appear for depositions. According to Plaintiffs, Defendants have agreed to attend depositions, but have indicated that they intend to respond only to questions about the preservation of evidence in this matter. (Ex Parte Application 2:25-3:1.) Defendant opposes Plaintiff's request for full depositions at this time, contending that "[s]ome of the accusations made by TracFone may implicate criminal liability, and counsel for Platform has not had sufficient time to properly assess" that liability or otherwise prepare witnesses for deposition. (Opposition to Ex Parte Application ("Opposition") 5:6-21.)

The Court's Order authorized Plaintiff to conduct "limited discovery" on an expedited basis. The phrase "limited discovery" was drafted by Plaintiff. Because an ex parte application is not the proper venue for defining the scope of this "limited discovery," and because Defendants have raised legitimate concerns regarding the implications of unfettered discovery at this early stage in the proceedings, Plaintiff's application is DENIED in this regard.

Exhibit _C_
Page _25_

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 07-1460 AG (MLGx) | Date | January 30, 2008 |
|---|---|---|---|

| Title | TRACFONE WIRELESS, INC., v. PLATFORM ENTERPRISES, ET AL. |
|---|---|

Plaintiff's request that Defendants be ordered to show cause why they should not be held in contempt for their destruction of the packaging from bulk quantities of TracFone pre-paid phones. Plaintiff cites language from the Order that "Defendants are required to preserve all evidence in this action including without limitation all evidence relating to the bulk purchase, sale, distribution and altering of TracFone/NET10 Prepaid Phones." Defendants do not deny that they have destroyed such packaging, but argue that they "can find no reasonable reading of the preservation Order that could be interpreted to mean that disposable product packaging must be collected and stored." (Opposition 7:15-17.) Given the broad language of the Order, the Court sets a hearing for **February 25, 2008 at 10:00 a.m.**, where Defendants will have the opportunity to show cause why they are not in civil contempt for their ongoing destruction of packaging from TracFone prepaid phones.

:     0

Initials of
Preparer

Exhibit ___C___
Page _26_

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is **800 West Sixth Street, Suite 430, Los Angeles, California 90017**.

I have caused the service of **SUPPLEMENTAL FILING IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR EXPEDITED DISCOVERY AND FOR ORDER TO PRESERVE EVIDENCE & REQUEST FOR FURTHER BRIEFING** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notified the following:

James B. Baldinger (jbaldinger@carltonfields.com)

Sarah K. Kohut (sarah@kohutlaw.com)

Maria Montenegro (mmontenegro@carltonfields.com)

Megan L. Wagner (megan@kohutlaw.com)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **April 24, 2008**, at Los Angeles, California.

Leticia Rosales (lettyrosales@byrnenixon.com)          /s/ Leticia Rosales
(Type or Print Name)                                    (Signature)